UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cr-20202-Ungaro/Reid

UNITED STATES OF AMERICA

v.

MARQUIES MCGIRT,
             Defendant.
_____/

## GOVERNMENT'S FACTUAL BASIS IN SUPPORT OF ENTRY OF GUILTY PLEA

Pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, the United States submits the following factual basis in support of the entry of a guilty plea by defendant Marquies McGirt to Count 1 of the information in this case, which charges the defendant with conspiring to violate Title 18, United States Code, Sections 1341 and 1346, by agreeing to execute a scheme through mailings via the United States Postal Service to defraud and deprive another of the intangible right of honest services; all in violation of Title 18, United States Code, Section 1349.

Because the factual basis set forth below serves the limited purpose of supporting the defendant's guilty plea, it is merely a summary and does not purport to represent all facts and circumstances relating to the defendant's participation in this offense. Because of its limited purpose, this factual basis similarly does not necessarily purport to identify all other

individuals involved in the criminal activity, or all aspects of their participation in the criminal activity.

Through his signature on the last page of this document, the defendant confirms that he has read the factual basis or has had it read to him in his native language. The defendant similarly confirms that he has discussed the factual basis with counsel and that the factual basis is true and correct to the best of the defendant's knowledge.

1. Experian, TransUnion, and Equifax were credit reporting agencies that collected and maintained data relevant to the credit worthiness of individual consumers. Experian, TransUnion, and Equifax (hereinafter "the credit reporting agencies") would use such data in order to generate numerical credit scores for consumers that sought to measure their credit worthiness.

2. Information that the credit reporting agencies would take into account in computing a consumer's credit score included the consumer's bill paying history and the consumer's borrowing and repayment history. According to the scoring system used by the credit reporting agencies, consumers with higher credit scores were deemed to be more favorable credit risks than consumers with lower credit scores. Businesses would rely on the credit scores generated by the credit reporting agencies in determining whether to extend credit to a prospective borrower and, if so, the terms under which credit would be extended.

3. Co-Conspirator #1 operated a for-profit credit repair business that assisted individuals in improving their credit scores, including individuals residing in Miami-Dade County.

U.S. v. Marquies McGirt – Page 2 (August 12, 2020)        Assistant United States Attorney  *md*
                                                          Attorney for Defendant            *AL*
                                                          Defendant

4. The defendant was employed as a Public Service Aide ("PSA") with the Miami-Dade Police Department ("MDPD"), which operates in Miami-Dade County, in the Southern District of Florida. A PSA is an unarmed civilian employee with no arrest powers, whose duties essentially involve providing support to sworn police officers. A PSA performs duties that can include investigations of non-violent crimes, minor crime scene processing, and other routine non-emergency law enforcement activities – such as directing traffic and responding to accidents without serious injury.

5. The defendant was assigned to MDPD's Northside District. Northside District is one of seven MDPD district stations, each of which covers a designated geographical area within unincorporated Miami-Dade County. Northside District covers the portion of unincorporated Miami-Dade Country that roughly spans from east-to-west between I-95 and NW 37th Avenue, north of the City of Miami and south of the City of Opalocka.

6. When an individual reports criminal activity to a PSA, as part of the PSA's official duties the PSA may document the reported information on an Offense-Incident Report ("OIR"), which is the same form used by a sworn MDPD police officer to document this type of information. An OIR contains areas for a variety of relevant information, which includes:

    a. the date and time when the PSA met with the reporting individual;

    b. the date and time of the incident;

    c. narrative information describing the incident;

    d. a description of the possible offense and the specific Florida statute violated;

U.S. v. Marquies McGirt – Page 3 (August 12, 2020)   Assistant United States Attorney
    Attorney for Defendant
    Defendant

   e. the names of the reporting individual and other potential witnesses, as well as other identifying information including address, phone number, and date of birth; and

   f. whether the reporting individual and other potential witnesses listed on the report were victims, witnesses, proprietors, or third party reporting persons.

  7. For an OIR to be entered into MDPD's official records, the report must include an "agency report number," more commonly known as a "case number." The case number is one of the primary means through which an OIR is organized in MDPD's record keeping system. To obtain a case number, a PSA must connect to the MDPD Communications Bureau and provide a two-number call signal associated with the type of offense to which the PSA is responding.

  8. As part of a PSA's official duties, a PSA may respond to a reported incident of the offense under Florida state law of "criminal use of personal identification," which is commonly known as identity theft. Responding to such an incident may result in the PSA writing an OIR. When a PSA is seeking a case number to include in an OIR for a suspected incident of identity theft, the PSA will provide the Communications Bureau with the call signal "54," which is the call signal associated with fraud offenses. Within MDPD, completed OIRs for suspected incidents of identity theft generally are routed to MDPD's Economic Crimes Bureau ("ECB"), which is the unit within MDPD generally charged with investigating such violations.

U.S. v. Marquies McGirt – Page 4 (August 12, 2020)  Assistant United States Attorney
  Attorney for Defendant
  Defendant

9. MDPD relies upon data from completed OIRs entered into its various record-keeping systems to make administrative determinations regarding allocation of resources within MDPD. These determinations can include allocation of personnel between different geographical districts, such as Northside District versus other districts, as well as the quantity of personnel to be allocated to a specialty unit, such as ECB, or the staffing assignments of personnel within a specialty unit.

10. The conspiracy in this case occurred from on or about December 14, 2015, through on or about October 18, 2017. The essence of the conspiracy involved the defendant agreeing to assist Co-Conspirator #1's business by creating OIRs that alleged certain customers of Co-Conspirator #1's credit repair business had been victims of identity theft, in return for Co-Conspirator #1 paying the defendant bribes in the form of cash and lifetime free credit monitoring, as well as discounted credit repair services for the defendant's family members and friends.

11. In furtherance of the conspiracy, Co-Conspirator #1 would provide the defendant with the customers' names and other identifying information, so that the defendant in turn could create OIRs that claimed those customers had been victims of the Florida state law offense of criminal use of personal identification.

12. The defendant would create OIRs, consistent with this plan. In the OIRs, the defendant would falsely represent that the alleged "victims" personally had reported to him facts consistent with having been victims of identity theft, when in fact the defendant had never met with the alleged victims.

U.S. v. Marquies McGirt – Page 5 (August 12, 2020)      Assistant United States Attorney _md_
                                                        Attorney for Defendant _AR_
                                                        Defendant _A.V_

13. To support the claims made in the OIRs, in the narrative section of the reports the defendant would falsely attribute to the alleged victims representations that they allegedly had made to him. For instance, in many of the reports the defendant would state as follows (or in substantially similar words): "V 1 [*i.e.*, the alleged victim] advised that on listed date [*i.e.*, the date of the report] he realized that unknown subject(s) gained access to his personal information and opened up several unauthorized accounts."

14. To bolster the purported authenticity of the OIRs, the defendant would obtain case numbers by connecting to the MDPD Communications Bureau and providing the call signal "54." The defendant would include the case numbers in the respective OIRs. The defendant would take official action by completing the OIRs with their respective case numbers and thereby causing data from the OIRs to be entered into MDPD's record keeping systems. As noted earlier, MDPD relies upon data from completed OIRs entered into its various record-keeping systems to make administrative determinations regarding allocation of resources within MDPD, including personnel and staffing allocation decisions.

15. The defendant would provide Co-Conspirator #1 with copies of the OIRs, which contained both the case numbers that the defendant had obtained from the MDPD Communications Bureau and data the defendant caused to be entered into MDPD's record keeping systems.

16. In order to induce the credit reporting agencies to remove negative items from the credit histories of Co-Conspirator #1's customers, Co-Conspirator #1 would send letters to the agencies, via the United States Postal Service, claiming that Co-Conspirator #1's customers

U.S. v. Marquies McGirt – Page 6 (August 12, 2020)          Assistant United States Attorney
                                                              Attorney for Defendant
                                                              Defendant

had been victims of identity theft. To support the claims in these letters, Co-Conspirator #1 would include a copy of the relevant OIR that the defendant had provided to him.

17. In return for the OIRs that the defendant created on Co-Conspirator #1's behalf, Co-Conspirator #1 would pay the defendant in the manner described in paragraph 10, above.

18. Records obtained through the investigation of this case reflect that the defendant created approximately twenty-four (24) OIRs in the manner described above, which Co-Conspirator #1 in turn sent to one or more of the credit reporting agencies.

19. As a PSA with the Miami-Dade Police Department, the defendant owed members of the public the right to his honest services. As such, the defendant was obligated to act in the public's best interests. By accepting bribes in return for creating and providing OIRs to Co-Conspirator #1, the defendant defrauded and deprived members of the public of their right to his honest services.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 12/18/2020     By: _____
                          MICHAEL S. DAVIS
                          ASSISTANT U.S. ATTORNEY

Date: 9/18/20        By: _____
                          ANDREW RIER, ESQ.
                          ATTORNEY FOR DEFENDANT

Date: 9-16.20        By: _____
                          MARQUIES MCGIRT
                          DEFENDANT

U.S. v. Marquies McGirt – Page 7 (August 12, 2020)         Assistant United States Attorney
                                                           Attorney for Defendant
                                                           Defendant